UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| UNITED STATES OF AMERICA, | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
| v. | ) | 3:24-CR-53-KAC-JEM |
| ERIC MICHAEL KINSLER, et al., | ) |  |
| Defendants. | ) |  |

**MEMORANDUM OPINION AND ORDER**
**OVERRULING OBJECTIONS AND ADOPTING REPORT**

This criminal action is before the Court primarily on Defendant Eric Michael Kinsler's (2) Objections to Report and Recommendation [Doc. 114], which Defendant Whitney Lynn Edwards (3) has adopted, [*see* Doc. 118]. Defendants Kinsler and Edwards ("Moving Defendants") object to United States Magistrate Judge Jill E. McCook's May 20, 2025 Report and Recommendation ("Report") [Doc. 96]. The Report recommends that the undersigned grant Defendant Edwards's Motion to Adopt Motion to Suppress [Doc. 55], grant Defendant Edwards's Motion to Adopt Supplemental Brief [Doc. 75], and deny the Motion to Suppress filed by Defendant Kinsler [Doc. 53] [*See* Doc. 96 at 22]. For the foregoing reasons, the Court **OVERRULES** the objections, **ADOPTS** the relevant portions of the Report, **GRANTS** the procedural motions, and ultimately **DENIES** the Motion to Suppress [Doc. 53].

**I.    Background**

Because Moving Defendants do not object to the Report's factual findings, [*see* Doc. 114], the Court fully adopts those findings and briefly summarizes the key relevant facts below. *See* 28 U.S.C. § 636. On June 23, 2023, law enforcement applied for, and a Blount County General Sessions judge issued, a warrant to search the residence at 1912 Laurel Lane in Maryville,

Tennessee [*See* Doc. 53-1]. Officers believed that a search of the residence would uncover evidence of drug trafficking [*See id.*]. The affidavit in support of the warrant provided that on June 1, 2023, a confidential informant ("CI") advised law enforcement that he or she "could purchase methamphetamine from a white female" known as Whitney "and a white male" known as Eric, "whose last name begins with a K" [*Id.* at 5]. The CI further advised that those two individuals "reside[d] together in a duplex in the area of Bojangles located at 1913 West Broadway Avenue" in Maryville, Tennessee [*Id.*]. Law enforcement began investigating Defendants Whitney Edwards and Eric Kinsler for methamphetamine distribution [*Id.*]. Officers discovered that Defendants Edwards and Kinsler were the "distributors of methamphetamine" the CI described [*Id.*]. And law enforcement confirmed that Defendants Kinsler and Edwards resided together in a "duplex" "at 1912 Laurel Lane," which is "located directly behind the Bojangles on West Broadway Avenue" in Maryville, Tennessee [*Id.*].

The affidavit further provided that between June 1 and June 23, 2023, law enforcement used a CI to conduct four (4) controlled buys of methamphetamine from Moving Defendants "at 1912 Laurel Lane, Maryville Tennessee 37801" [*See id.*]. On each occasion, law enforcement "directed and controlled" the transaction, following certain procedures [*Id.*]. Law enforcement "searched" the CI to ensure he or she was not in possession of "contraband" [*Id.*]. Law enforcement then equipped the CI with a surveillance "device" and "marked U.S. currency" [*Id.*]. An undercover officer then "transported" the CI "directly to 1912 Laurel Lane . . . without making any stops" [*Id.*]. During each of the controlled buys, the CI "met with either Whitney Lynn Edwards or Eric Michael Kinsler at 1912 Laurel Lane" and "exchange[d] the marked U.S. currency for methamphetamine" [*Id.*]. Law enforcement monitored each transaction "through electronic surveillance/monitoring equipment and/or independent investigations" [*Id.*]. Law

2

enforcement "corroborated" "all information" it received from the CI [*Id.* at 7]. Investigators recognized "[a]ll conversations" that they "listened to" as "consistent with" illegal drug sales [*Id.* at 5]. "At the conclusion of" each transaction, law enforcement "transported" the CI "directly back to a predetermined meet location without making any stops," and the CI "turned over" the methamphetamine he or she purchased [*Id.*]. Law enforcement conducted the latest controlled buy less than 72 hours before applying for the search warrant [*Id.* at 7]. That controlled buy followed the usual procedures outlined above [*See id.*]

On June 27, law enforcement executed the warrant [*See id.* at 14]. The search of the residence at 1912 Laurel Lane yielded, among other things, hundreds of "pieces of white pills," individual "[p]lastic bags containing crystal methamphetamine," a cell phone belonging to Defendant Kinsler, a cell phone belonging to Defendant Edwards, over $2,000 in U.S. currency, and various firearms and ammunition [*See id.* at 14-15; *see also* Doc. 79-1 at 1, 2]. Moving Defendants, who were inside the residence at the time of the search, were detained [Doc. 72 at 10-12, 16-17]. Moving Defendants each consented[1] to the search of their respective cell phones [Doc. 79-1 at 1, 2]. After obtaining consent, law enforcement searched the cell phones, which yielded potentially relevant evidence [*See* Docs. 96 at 2-3; 114 at 1-2]. During and after the search, Defendant Kinsler made various potentially incriminating statements to law enforcement [*See* Docs. 96 at 6-7; 53 at 3].

A grand jury charged Moving Defendants and three (3) other alleged co-conspirators with various drug trafficking and firearm offenses [*See* Doc. 3]. Defendant Kinsler moved to suppress all evidence the United States obtained through the search at 1912 Laurel Lane including Moving

---

[1] Neither Defendant Kinsler nor Edwards argues that their respective consent was not voluntary [*See* Doc. 96 at 21].

Defendants' cell phones and their contents and potentially incriminating statements Defendant Kinsler made to law enforcement [Doc. 53 at 1-3]. In support, Defendant argued that there was not a "sufficient [probable cause] nexus between criminal activity and the inside of the residence" to support the search warrant [*See id.* at 1-2]. Defendant Edwards filed a Motion to Adopt Defendant Kinsler's Motion to Suppress [Doc. 55]. Defendant Kinsler filed a Supplemental Brief in Support of the Motion to Suppress [Doc. 74], which Defendant Edwards moved to adopt as well [Doc. 75]. The United States responded [Doc. 79].

After a hearing, Judge McCook issued the Report [Doc. 96]. It recommends that the undersigned grant Defendant Edwards's Motion to Adopt Motion to Suppress [Doc. 55], grant Defendant Edwards's Motion to Adopt Supplemental Brief [Doc. 75], and deny the Motion to Suppress [Doc. 53] [*See* Doc. 96 at 22].

Defendant Kinsler filed the instant Objections [Doc. 114]. He asserts, as relevant here, that the Report erred in concluding that the affidavit established probable cause to search the residence at 1912 Laurel Lane [*See* Doc. 114 at 2]. And he argues that, as a result, the Court must suppress the potentially incriminating statements he made and the contents of Moving Defendants' respective cell phones as "fruit of the poisonous tree" [*Id.* at 7]. The United States did not file any objections to the Report, but it disputed Defendant Kinsler's objections [Doc. 116]. Defendant Edwards adopted Defendant Kinsler's objections [*See* Doc. 118].

## II. <u>Analysis</u>

Under 28 U.S.C. § 636(b)(1), the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). The Court considers timely objections under Section 636(b)(1)(C) and Federal Rule of Criminal Procedure 59(b) de novo. *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Crim P. 59(b)(3).

As an initial matter, with no objection, the Court **ADOPTS** the portion of the Report recommending that the undersigned grant Defendant Edwards's Motion to Adopt Motion to Suppress [Doc. 55] and Motion to Adopt Supplemental Brief [Doc. 75] [*See* Doc. 96 at 22]. *See* 28 U.S.C. § 636. And the Court **GRANTS** those motions [Docs. 55, 75].

As it relates to the Motion to Suppress, the Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend IV. "[P]robable cause is a fluid concept" "incapable of precise definition" and "not readily, or even usefully, reduced to a neat set of legal rules." *Maryland v. Pringle*, 540 U.S. 366, 370-71 (2003) (quotation omitted); *United States v. Sanders*, 106 F.4th 455, 461 (6th Cir. 2024) (en banc). Regardless of "what[] nomenclature one uses to describe" it, probable cause "depends on the totality of the circumstances." *Sanders*, 106 F.4th at 461 (quotation omitted). The Court assesses whether, under all the circumstances, there is a "fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* (quotation omitted).

When a search of property is involved, there must be a "probable cause nexus," that is "an affidavit in support of a search warrant" must "sufficiently show that the specific things to be searched for . . . are located on the property to which entry is sought." *Id.* at 460-61 (cleaned up) (citations omitted). The Court looks at what is in the affidavit, "not what it lacks." *Id.* at 463 (internal quotation omitted). The affidavit must provide "direct or circumstantial support to create more than mere suspicion" that law enforcement will find the "contraband" or evidence it seeks "at the location in question." *See id.* at 462 (quotation marks and citation omitted). This is "not a 'high bar.'" *Id.* (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018)).

5

Given its "fact-intensive" nature, "many roads . . . can lead to a probable cause nexus." *Id.* at 461-62. One constitutional "road" involves an affidavit describing "a controlled purchase of contraband followed by the defendant returning to the location" law enforcement seeks to search. *Id.* at 462. This evidence "creat[es] a reasonable inference that the defendant took the proceeds with him." *Id.* Another viable road "involves a search warrant affidavit that adequately establishes both where a defendant resides as well as . . . [his] active engagement in" drug dealing. *Id.* That evidence gives rise to a reasonable inference—commonly referred to as the "known drug dealer" inference—that the defendant keeps the "fruits" of his drug dealing "in his residence." *See id.*; *see also United States v. Higgins*, 141 F.4th 811, 815 (6th Cir. 2025). These are but two roads. There are others. There is "no model fact pattern" for establishing probable cause. *Sanders*, 104 F. 4th at 462.

Here, the Report did not err in concluding that the affidavit established probable cause to search for evidence of drug dealing, proceeds, and contraband in the residence at 1912 Laurel Lane. The affidavit described how a reliable CI initially indicated he or she could purchase illegal narcotics from individuals named "Whitney" and "Eric K" who lived together near the West Broadway Avenue Bojangles in Maryville, Tennessee [Doc. 53-1 at 5]. Law enforcement confirmed that Moving Defendants lived together in a residence at 1912 Laurel Lane, which is located "directly behind" the West Broadway Avenue Bojangles in Maryville, Tennessee [*Id.*]. And the affidavit established that Moving Defendants sold methamphetamine *at* 1912 Laurel Lane *four* **(4)** times in the three (3) weeks leading up to the search warrant application [*Id.* at 2, 5]. The last sale was less than ***72 hours before*** law enforcement sought the warrant [*Id.* at 5, 7]. Under the totality of the circumstances, then, the affidavit established a "fair probability" that law enforcement would find evidence of drug dealing in the residence where Moving Defendants lived

6

Case 3:24-cr-00053-KAC-JEM   Document 120   Filed 07/25/25   Page 6 of 8   PageID #: 551

located at 1912 Laurel Lane, an address at which Defendants sold methamphetamine at least four times. *See United States v. Moore*, 999 F.3d 993, 997 (6th Cir. 2021) ("even a single controlled purchase can be sufficient to establish probable cause to believe that evidence of drug trafficking is present at the purchase location" (citation omitted)); *see also Sanders*, 106 F.4th at 461, 462, 465 (discussing different "roads" to establish probable cause including (1) "a credible informant's tip of criminal activity occurring ***in or directly outside of the location of the search***" and (2) where evidence shows that the defendant is a "known drug dealer" and resides at the place law enforcement seeks to search (emphasis added)); *see also United States v. Abdalla*, 972 F.3d 838, 849 (6th Cir. 2020) (upholding finding of probable cause to search defendant's residence even though officers "did not rely on an ideal informant," because the affidavit described three (3) controlled drug buys "at [the] residence" and there was "corroborating evidence").

Against this law, Moving Defendants' Objections are unpersuasive. The facts of this case need not be on all fours with *Sanders* to satisfy probable cause [*See* Doc. 114 at 2-4]. *Sanders* itself recognizes that there are "many roads" to probable cause and describes only some of those roads. *See Sanders*, 104 F. 4th at 461-62. Nor is probable cause somehow lacking because the affidavit describes the four controlled buys as occurring ***at*** 1912 Laurel Lane rather than ***in*** or ***from*** 1912 Laurel Lane [*See* Doc. 114 at 2-4]. The preposition used is not determinative here. Even if the four controlled purchases of methamphetamine occurred in the yard or driveway at 1912 Laurel Lane (a risky choice with law enforcement watching), the fact that Moving Defendants lived in the residence at 1912 Laurel Lane and were reliably known to sell drugs, and did in fact sell drugs ***at*** 1912 Laurel Lane multiple times over three weeks, is enough to establish probable cause here. Accordingly, the Report did not err in concluding that the affidavit established probable cause to search the residence at 1912 Laurel Lane for evidence of drug dealing and contraband.

Because there was probable cause to support the search, and thus no constitutional violation, Moving Defendants' argument that Defendant Kinsler's statements and the contents of Moving Defendants' cell phones should be suppressed as fruit of the poisonous tree are unavailing. *See Codrington v. Dolak*, --- F.4th ----, 2025 WL 1892818, *7 (6th Cir. July 9, 2025) (describing the fruit-of-the-poisonous-tree doctrine and exclusionary rule as a judicially-created remedy for a constitutional violation). Moreover, Moving Defendants do not challenge the validity of their respective consent to search their respective cell phones [*See* Doc. 114].

### III. Conclusion

As set forth above, the Court (1) **OVERRULES** the Objections to Report and Recommendation [Doc. 114], (2) **ADOPTS** the relevant portions of the Report [Doc. 96], (3) **GRANTS** Defendant Edwards's Motion to Adopt Motion to Suppress [Doc. 55] and Motion to Adopt Supplemental Brief [Doc. 75], and (4) **DENIES** the Motion to Suppress [Doc. 53].

SO ORDERED.

/s/ Katherine A. Crytzer
KATHERINE A. CRYTZER
United States District Judge